Good morning, your honors. My name is Karen Bucher. I represent the appellant D'Angelo McVay, and today I'm prepared to submit on my briefs and my 28-J letter, and I have nothing to add unless this court has specific questions. Okay. You may have something in rebuttal. I may not. Okay. Thank you. Good morning, your honors. May it please the court. California Deputy Attorney General Carl Henry, representing the California warden in this case, responded, I believe. Simply put, the circuits Bockington case has no precedential value as to analysis regarding Teague's second exception. This is so because no more than one judge found that that was the case. Of course, a second judge, Judge Wallace, believed the exact opposite, and the third judge, Judge Noonan, found that Teague did not apply at all. Simply put, as the 2nd, 6th, 7th, 8th, and 10th circuits have all now published, Crawford does not apply retroactively to this case. I did provide the court today with the 2nd circuit's decision as of seven days ago, finding that Crawford did not apply retroactively. And the 6th circuit decision is discussed in the 2nd, 7th circuit's case, excuse me. I will point out in the 2nd circuit's case, the 7th circuit's case, excuse me, from April 1st of 2005, the court went to great lengths to describe what it saw was going on in the Bockington case. And the court wholeheartedly agreed with Judge Wallace's opinion as to the 2nd exception Teague analysis. Are these two cases you gave us today cases arriving under the AEDPA? Yes. And I think it's clear in our briefs, but I'd like to say it again because I think this is where Judge McEwen dropped the ball in the Bockington case. There are two shields at play here. The first shield is Teague, or as Justice O'Connor describes it in Williams v. Taylor, it's a constraint. The second constraint is the AEDPA standard of review analysis. And what that means in this case is that even if a court were to find that Crawford applies retroactively, it still does not apply to this particular case. Because Crawford was not clearly established in United States Supreme Court law at the time of the state court merits adjudication in this case. So in short, while a petitioner may hurdle one constraint or one bar or one shield, he or she has to hurdle the second bar or second shield as to cases which may or may not be retroactively applied. What if the California court didn't understand the case in front of it? For example, the California court might have thought that Mr. McVeigh actually had opened the door instead of as one of his co-defendants. That is to say, the California court analyzed the case under misapprehension of fact. That's not the case here for two reasons. Number one, and I want to make it very clear because I don't think it's clear in my brief, and I apologize for that fact, Appellant's counsel in the state court of appeal cited to Oral v. Roberts. Counsel also cited to Oral v. Ohio, excuse me, v. Roberts in the petition for review to the California Supreme Court. So that issue was well known to the courts as to whether or not this was a Roberts-type Sixth Amendment issue. Furthermore, as the high court procurum opinion states in Packard, a state court need not even be aware of high court's authority as long as it doesn't come to a decision or a resolution that is contrary to that high court's decision. So stringing those two points together, number one, the court, both the California court of appeal's decision, which is the issue germane from the district court standpoint, was aware of the Roberts issue because it was cited in the opening brief to which we responded. I was counsel in the state appellate court. And counsel also having cited to Ohio v. Roberts in the petition for review, which the California Supreme Court denied, or at least denied hearing of the issue, that issue was well aware to the state courts as to the merits adjudication in this case. So there's no misapprehension here. This was just an all the factual predicate that the court that Your Honor mentions was another basis for a decision in the case, and they chose to go with that one. At least the court of appeal did in its statement of the issue. But it certainly was aware of the Sixth Amendment issue as well. And, of course, the Supreme Court's decision is what it is in terms of it denying review. Roberts. Assuming, and I'm certainly not asking for you to concede, assuming that there's constitutional error, either Crawford error because it really is retroactive or constitutional error even without Crawford, assuming that, what's the standard by which we would we judge harmlessness here? Is it BRAC? BRAC. There's no question about it. Okay. And why, in your view, is it harmless? Because I assume you think it is. As the district court found, I think the language the district court used was that the appellant or petitioner's cousin's statement, Michael Blow's statement, was only a small, a small portion of the overwhelming evidence in this case. You had the victim who testified ad nauseum as to the events occurring to him. And as the court is obviously aware of, what occurred is on cross-examination, the prosecutor asked the detective, in addition to the other people that you've interviewed, since that door was, quote, unquote, opened by the co-defendant, who else did you speak to? I spoke to Michael Blow. Oh, no. I understand that. Yes. And so I'm trying to figure out what evidence do we have in addition to detective – I think it's Detective Aguirre's testimony as to what Michael Blow said to him. I mean, that's the error. I'm saying, Your Honor, quite simply, as the district court found, you take that piece of evidence out of this case, and this guy absolutely would have been convicted under BRAC. Okay. But what I'm after is you're saying, okay, we have a lot of testimony from Miller.  What other testimony – and the argument is, well, Blow is just replicating testimony or evidence we've heard elsewhere. We have from Miller. Who else? That's it. So the question is whether or not Miller was sufficiently detailed in his testimony and sufficiently credible that the support that this testimony got from Blow was harmless. Sure. My problem is – and this is a curable problem and it's not quite yours. In preparing the case, all I had was the excerpts of record. I did not have all of Mr. Miller's testimony. I actually – It's in the full record, I assume. Sure. But as you probably know, when we get it, we only have one full record. And one judge ordinarily has access to the full record. The rest of us just has the excerpts. We can go back later. But if you really were relying on the full testimony, it would have been helpful to us to have had it in the excerpts. It's a curable problem and you don't need now to do it, but I just let you know mechanically how we operate. What I did, Your Honor, is I supplied a supplemental to counsel's excerpts of records to which I gave what I believed were the relevant portions of Miller's testimony, or I think I did, in the supplemental. Well, there are some additional excerpts of Miller, but the full testimony and the narrative to which Mr. Blow was apparently – Mr. Blow's, if I can say, hearsay testimony was sort of duplicative. There's a lot that's not in there, but we can cure it. I just want to tell you mechanically how we operate. Sure. I understand, and again, to the extent that I didn't add it to the supplemental. No, that's okay. No apology needed. But I would like to further answer the Court's question. In this particular case, the jury heard testimony from the petitioner. The petitioner basically said, I saw the victim at two of the relevant locations. Yes, I was at my mother's house where the abduction occurred. The petitioner also told the jury, yes, I was at the friend's house or the relative's house later on down the road where all the mutilations occurred, or at least the mayhem occurred vis-a-vis the activities in the car and the beatings and so forth. So the jury heard, in addition to Miller, petitioner admit to the jury that, yes, I was at the relevant locations. And from that standpoint, the jury was obviously called to make a judgment call as to whether or not, given your admission that you were at the scene, should we credit or discredit your alibi vis-a-vis, yes, I went back to work, yes, my timesheets reflect that fact, and yes, these people that work with me can testify as to my good character. So I think I emphasized that in my briefs, but to the extent I didn't, that's the point I would make. In addition to Miller's testimony, overwhelming as it was, you had the petitioner testify and basically admit to being at the scene to which the jury could have taken into consideration as well for purposes of practice. Okay. Thank you. Thank you. Roboto? I agree with the government that the correct harmless error analysis is under Brecht v. Anderson. And the question is, not were the jurors right in their verdict, but did the error of Michael Blow's testimony coming in have effect on the jury's verdict? And Michael Blow's testimony was the only evidence that supported the victim's account about what happened inside the house. Michael Blow told the detective that he saw a co-defendant with a gun, said the co-defendants accused the victim of ripping someone off, and they were paid money to kill him, and that Mr. McVeigh did leave with the victim. So I thought that was very damaging. And his look at it, even if a single juror might have changed his or her mind. And the error was compounded because Mr. McVeigh could not bring out the victim's bias in his case. The fact that he belonged to a rival gang of a co-defendant. And to top it off. Now, he denied that he belonged to a gang. He did. But in the excerpts of record of ER111, right in the police report, Detective Aguirre did state that he is an admitted gang member of this particular gang. But you've already tried to say that Detective Aguirre is maybe not the most reliable of hearsay recounters. That is to say, you want to believe that, but you don't want to believe what he said Mr. Blow said. No, I'm just saying that it's part of the whole picture. That he couldn't cross-examine, you know, on bias. It's a small part. And then to top it off, during closing argument, the prosecutor really exploited Michael Blow's statement and really used that in the argument during closing argument to convict Mr. McVeigh. And I have to remember that he has served a life sentence without the possibility of parole. Okay. Thank both of you for your argument. The case of McVeigh v. Rowe is now submitted for decision. The next case on the argument calendar is, I'm not sure how to pronounce it, Preen v. Trask.
judges: T.G. Nelson, W. Fletcher, Bea